IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**DONNA M. BERGMAN**,

    Plaintiff,

    v.

**MICHAEL J. ASTRUE,
Commissioner of Social Security**,

    Defendant.

No. 3:11-cv-06107-MO

OPINION AND ORDER

**MOSMAN, J.**,

Plaintiff Donna Marie Bergman challenges the Commissioner's decision denying her claim for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Ms. Bergman applied for DIB on April 24, 2007, alleging disability since June 1, 2004. AR 10.[1] This application was denied initially on June 28, 2007, and upon reconsideration on November 5, 2007. *Id.* An administrative law judge ("ALJ") held a hearing on October 15, 2009, and on November 13, 2009, the ALJ issued her decision denying Ms. Bergman's application. *Id.* at

---

[1] Citations to the Administrative Record ("AR") refer to the indicated pages in the official transcript of the Administrative Record filed by the Commissioner on August 1, 2011 (Docket # 6).

1 – OPINION AND ORDER

19. The Appeals Council denied review on February 4, 2011, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1. Ms. Bergman appealed on March 30, 2011.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. § 404.1520 (establishing the five-step evaluative process for DIB claims). At step one, the ALJ found Ms. Bergman worked in 2004 and 2005 in the office of a manufactured home business and as a flagger for a painting company. AR 12. This work, however, did not rise to the level of substantial gainful activity. *Id*. The ALJ found Ms. Bergman's refractory adhesive capsulitis, chronic cervical strain, and mild ulnar neuropathy "severe" at step two, but found that these conditions did not meet or equal a listing at step three. *Id*. at 12–13. Ms. Bergman's depression was found non-severe at step two because the symptoms existed prior to her alleged onset date and because the record does not contain any medically acceptable clinical findings diagnosing her with such a condition. *Id*. at 12. The ALJ assessed Ms. Bergman's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work…except she would have the following manipulative limitations: no reaching or overhead reaching with her left upper extremity. She would be able to use her left upper extremity only as an assisting arm in a non-elevated forward posture. She would be able to use her left hand and would have no limitations in the use of her right upper extremity.

*Id*. at 13. At step four, the ALJ found Ms. Bergman could not perform past relevant work. *Id*. at 17. The ALJ found that this RFC allowed Ms. Bergman to perform work in the national economy at step five in the sequential proceedings, and therefore found her not disabled. *Id*. at 18.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record.

2 – OPINION AND ORDER

42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## ANALYSIS

Ms. Bergman asserts two assignments of error. First, Ms. Bergman argues that the ALJ erred because she failed to discuss the lay testimony of her ex-sister-in-law, Alonnie M. Clarkson. Second, she argues that the ALJ improperly relied on vocational expert ("VE") testimony that is inconsistent with the *Dictionary of Occupational Titles* (*"DOT"*). As a result, Ms. Bergman asserts that the ALJ erred in finding her not disabled at step five in the sequential process. (Pl.'s Opening Br. [10] 9).

### I.   **Failure to Consider Lay Testimony**

Ms. Bergman assigns error to the ALJ's failure to mention lay testimony regarding her functional capacity. *Id.* at 7. The Commissioner concedes error, but argues it was harmless. (Def.'s Br. [11] 5).

3 – OPINION AND ORDER

### a. *Lay Testimony Standard*

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's failure to properly discuss competent lay testimony favorable to the claimant may be found a harmless error, but only if the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'n, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

### b. *Lay Testimony Analysis*

Alonnie M. Clarkson submitted a third-party report on May 12, 2007. AR 134–41. Ms. Clarkson stated that she has known Ms. Bergman for thirty years, visits her four to five times a year, and speaks with her weekly by phone. *Id*. at 134. Ms. Clarkson stated that Ms. Bergman is able to perform normal daily activities of living including: laundry, light gardening, using a riding lawnmower, preparing simple meals, and preparing complete meals on occasion. *Id.* She noted that Ms. Bergman feeds her horses, though she receives help from a roommate. *Id.* at 135. Ms. Clarkson also indicated that Ms. Bergman is much slower in performing these activities and is no longer able to do activities requiring the use of both arms. In response to a section asking about Ms. Bergman's ability to reach and lift, she wrote, "she can't lift her left arm above her head by its self – can't reach with it because she can't hold it up by itself" and "can't [lift] at all with [left] arm." *Id*. at 139.

The ALJ made no reference to Ms. Bergman's report in her decision. Fully crediting Ms. Clarkson's testimony, however, does not lead to a different disability determination because it is not in conflict with the RFC. The ALJ accounted for the limitations raised by Ms. Clarkson in determining Ms. Bergman's RFC. As discussed above, Ms. Bergman is limited to light work and has a number of restrictions on her left arm. As a result, even if Ms. Clarkson's testimony were fully credited, it would not lead to finding Ms. Bergman disabled. Therefore, even though the ALJ erred in failing to mention her testimony, I hold that the error is harmless.

Additionally, the ALJ's error is harmless because Ms. Clarkson's testimony was strikingly similar to the testimony of Ms. Bergman, which the ALJ properly rejected.[2] Ms. Clarkson and Ms. Bergman filled out an identical report. In more than one response, Ms. Clarkson appears to overstate Ms. Bergman's limitations when compared to Ms. Bergman's report. For example, with respect to personal care, Ms. Clarkson noted that Ms. Bergman has difficulty putting shirts and coats on by herself and that she has to use her right hand to lift her left arm up to wash her hair. *Id*. at 135. Ms. Bergman, however, checked a box indicating that she does not have problems with either activity. *Id*. at 145. Additionally, Ms. Clarkson noted that Ms. Bergman does not go places on a regular basis whereas Ms. Bergman stated that she regularly goes to the store, movies, and ball games. *Id*. at 138, 148.

Although the ALJ did not address Ms. Clarkson's testimony, she did account for the assertions made by Ms. Clarkson by assessing the testimony of Ms. Bergman. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, No. 10-16578, 2012 WL 1071637, at *13 (9th Cir. Apr. 2, 2012) (quoting

---

[2] Ms. Bergman did not dispute the ALJ's finding that she was not credible. Her testimony was properly discredited because of a combination of factors, including: inconsistent medical treatment, lack of medical evidence, failing to follow her doctor's recommendation, and failing to seek medical treatment.

5 – OPINION AND ORDER

*Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Except where Ms. Clarkson's report overstated symptoms, her testimony is similar to that of Ms. Bergman. And where Ms. Clarkson's report did overstate the claimant's asserted symptoms, the reasons the ALJ provided for discrediting Ms. Bergman apply with equal force, if not more. Therefore, the ALJ's error is harmless in light of her undisputed, valid, reasons for discrediting Ms. Bergman.

## II.  Step Five Findings

At step five, the ALJ determined that Ms. Bergman could perform work in the national economy based on the testimony of a VE. AR 18. Ms. Bergman asserts that the ALJ erred in not finding her disabled at step five in the sequential process. (Pl.'s Opening Br. [10] 9). She claims that the ALJ erred in relying on VE testimony that deviated from the *Dictionary of Occupational Titles* ("*DOT*") without a reasonable explanation. (*Id.* at 6).

### a.  *Step Five Standards*

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the *DOT*, or draw upon a VE's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 404.1566(d-e). The decision to use a VE is reserved for the Commissioner. 20 C.F.R. § 404.1566(e).

The ALJ's questions to the VE must include all properly supported limitations, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001), and the ALJ must ask the VE whether her testimony is consistent with the *DOT*. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ may rely upon a VE's testimony rather than the *DOT* when the issue is "complex," 20 C.F.R. § 404.1566(e), or when "the record contains persuasive evidence to support the deviation."

6 – OPINION AND ORDER

*Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Such evidence includes available job data and a claimant's specific limitations. *Id.* Failure to inquire is harmless if the vocational expert "provided sufficient support for her conclusion so as to justify any potential conflicts," or if no conflict arises. *Massachi,* 486 F.3d at 1154 n.19. Although the *DOT* raises a presumption as to the job classification, it is rebuttable. *Johnson*, 60 F.3d at 1435. The *DOT* "is not the sole source of admissible information concerning jobs." *Id.* (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)).

    **b.**  *Step Five Analysis*

The ALJ directed the VE to assume that the claimant was restricted to light work and her left arm could only function as an assisting arm. AR 47–48. The VE testified that Ms. Bergman could not perform her former job, but could work either as a gate guard, security guard, or an usher.

The VE characterized gate guard as having a Specific Vocational Preparation ("SVP") of 2, despite it being identified in the *DOT* as having SVP 3. The vocational expert explained the inconsistency with the statement that the date that the *DOT* last updated the position was in 1980 and that a 2008 publication entitled *Occupational Projections and Training Data*, a 2007 publication by the State of Oregon Employment Department, and his experience indicate that this job can be learned in thirty days or less. *Id.* at 48. The ability to learn a job in thirty days or less is tantamount to SVP 2, unskilled work. *Id.* This job requires occasional reaching and handling, however, the *DOT* does not indicate whether it requires both hands or if it can be done with one. It was the VE's opinion that the job could be done with one hand. I hold that the VE provided persuasive evidence to classify the gate guard position as SVP 2 and that his opinion that it can be

7 – OPINION AND ORDER

done with one hand is not in conflict with the *DOT's* explanation and, to the extent there is any conflict, it was adequately justified based on the VE's experience.

The VE also characterized security guard as having SVP 2 while the *DOT* identifies it as having SVP 3. The VE's explanation as to this inconsistency was the same as that for the gate guard. There was, however, a 1993 addendum to the *DOT* that indicates that a security guard occupation requires frequent reaching and handling. The expert disagreed. Based on conducting labor market surveys and onsite job analyses it was his opinion that the job only required *occasional* reaching and handling and could be done one-handed. *Id.* at 50. Such evidence of the characteristics of specific jobs in the local area is appropriate and persuasive. *Johnson*, 60 F.3d at 1435.

Lastly, the *DOT* lists the occupation of an usher as requiring occasional reaching, handling, fingering and no feeling. AR 50. Based on the VE's analysis of the job in the *DOT* and talking with individuals in this occupation, it was his opinion that it could be done one-handed. *Id*. His opinion is not in conflict with the *DOT* and takes into account the complexity of Ms. Bergman's specific limitations. Additionally, any implicit inconsistency with the *DOT* was adequately explained based on the VE's experience. Any error as to this job is harmless, in any event, because there are still a significant number of two other jobs in the national economy that Ms. Bergman can perform.[3]

The ALJ's reliance on the VE's explanation that Ms. Bergman could perform work in the national economy was adequately explained and supported. Therefore, I affirm her step five findings.

---

[3] The vocational expert testified that there are about 1,000 gate guard jobs and about 5,000 security guard positions in Oregon. AR 49. The Ninth Circuit cases have found that approximately one thousand jobs in the local area is a significant number. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this   19th   day of April, 2012.

                                             /s/ Michael W. Mosman
                                           MICHAEL W. MOSMAN
                                           United States District Court